Chief Judge Conway
(dissenting). The factual highlights are as follows: On February 13, 1940, appellant was convicted and sentenced to Elmira Reformatory for an indefinite term, the maximum of which was 10 years. On August 29, 1941, appellant was released on parole. On March 9, 1942, appellant Avas convicted of a felony, committed Avhile on parole, and sentenced to State prison for an indeterminate term of 5 to 10 years. On March 11, 1942, he was received at State prison and commenced serxdng the unexpired maximum of his Elmira sentence. On March 11, 1943, appellant was paroled on his Elmira sentence to begin serving his State prison sentence — inside State prison walls. Thus, both sentences were now to run concurrently. As Judge Burke expresses it: “This permitted him to receive credit on the Elmira sentence as a parolee while serving the balance of the State prison term.” On August 8, 1946, appellant Avas released from prison on parole. On January 13, 1947, the Parole Board declared the appellant delinquent — he was convicted of a misdemeanor and sentenced to a New York City penitentiary for an indefinite term. On March 30, 1948, appellant was returned to State prison. On October 24, 1950, appellant was again released on parole. On May 20, 1954, the Parole Board declared the *234 appellant delinquent — he was convicted of a misdemeanor and sentenced to a New York City penitentiary for the term of one year* On July 8, 1955, appellant was returned to State prison, and there he still remains.
Appellant’s Elmira and State prison sentences were not running while he was, on the two occasions in question, incarcerated in a New York City penitentiary for the misdemeanors committed while on parole, and, therefore, the appellant was not entitled to credit on his Elmira and State prison sentences for the time spent in the New York City penitentiary (see Matter of Sperling v. Moran, 277 App. Div. 778, motion for leave to appeal denied 301 N. Y. 816).
As of March 30, 1948, appellant owed 3 years, 5 months and 27 days on his Elmira sentence, and 5 years, 7 months and 23 days on his State prison sentence. The Parole Board and Department of Correction, on March 30, 1948, without ■ legal power so to do, declared that the appellant’s Elmira and State prison sentences would thenceforth run consecutively. That is, the State prison sentence would not begin to run again until after his Elmira sentence had expired. On that theory, the Elmira sentence expired on September 27, 1951; the State prison sentence commenced to run on September 27, 1951; it stopped running on May 20, 1954 because of appellant’s act of delinquency while on parole; as of that day, May 20,1954, appellant owed 3 years, 4 months and 15 days on his State prison sentence; when appellant was returned to State prison on July 8, 1955, he was credited with-4 months and- 24 days’ parole jail time, and his sentence commenced to run again; thus appellant’s sentence will not expire until June 29, 1958.
Appellant contends, however, quite properly, that the Parole Board and Department of Correction did not have the power to so stop the running of his State prison sentence. Accordingly, appellant concludes, his Elmira sentence expired on September 27, 1951, and his State prison sentence expired on April 8, 1954.
After appellant had been convicted of a felony while on parole in 1942 (for; which felony he received a State prison sentence of 5 to 10 years), the Parole Board could have properly required the appellant, upon his return to prison, to have served the full balance of his- Elmira sentence (the maximum of which *235 was 10 years) before permitting him to serve his State prison sentence (Correction Law, § 219). Upon his reincárceration in prison in 1942, the Parole Board did require him to serve only his Elmira sentence. However, in 1943, the appellant was paroled on his Elmira sentence within prison walls to begin the service of his State prison sentence. Thus, as of and after that time, the two sentences were to and did run as one. In 1946, appellant was released on parole and both sentences, of course, continued to run until 1947 when he was declared delinquent. When he was returned to prison on March 30, 1948, both sentences again began to run. The Parole Board and Department of Correction, however, declared, at that time, that his State prison sentence should stop running until after his Elmira sentence had expired. Those agencies had not the power to thus stop the appellant’s State prison sentence from rurming. We had occasion, recently, in People ex rel. Rainone v. Murphy (1 N Y 2d 367, 373), to summarize the circumstances under which a sentence may be suspended, interrupted or modified: “ the sentencing judge may suspend the sentence before imprisonment has begun, but not thereafter; the prisoner himself may interrupt the sentence by escape from prison or by violation of parole; the Governor, of course, by commutation or pardon, may modify the sentence; and the Parole Board, having the power only to ameliorate punishment under the sentence by parole, can itself do nothing insofar as the running of the sentence is concerned.”
It is not possible to fit what happened here within the purview of the above-quoted portion of the opinion in the Rainone case. It is conceded by respondent that the Elmira and State prison sentences commenced to run as one in 1943. Upon appellant’s violation of parole in 1947, both sentences stopped running. However, when appellant was returned to prison in 1948, both sentences commenced to run again. It seems to me that the attempt, in 1948, to cause appellant to serve the balance of his Elmira sentence before serving the balance of his State prison sentence clearly came too late — there was no power to do it. That could have been done in 1942 when appellant was returned to prison after having committed a felony while on parole (Correction Law, § 219). Hence, it would seem that the Parole Board and Department of Correction may, under section 219 *236 of the Correction Law — after a prisoner has been convicted of a felony while on parole —suspend the running of the new sentence until the balance of the old sentence had been fully served; but, once it has permitted that new sentence to run, at the same time as the old one, it may not thereafter stop it. In short, there is originally discretion as to when the new sentence shall begin to run, but once it has been permitted to begin to run, there is no power to stop it. We so held in People ex rel. Rainone v. Murphy (supra).
We do not agree that, because of appellant’s violation of his parole, on January 13,1947, the Parole Board had the authority, under section 218 of the Correction Luav, to require appellant to — upon his reincarceration in prison — thenceforth serve his Elmira and State prison sentences consecutively. Upon appellant’s commission of a misdemeanor while on parole, both the Elmira and State prison sentences — Avhich had been running as one — stopped running. They commenced to run again, hoAvever, when appellant was apprehended and returned to prison on March 30, 1948. Under section 218 of the Correction LaAv, upon a delinquent parolee’s return to prison, the Parole Board “ may, if it sees fit, require such prisoner to serve out in prison the balance of the maximum term for which he was originally sentenced calculated from the date of delinquency or such part thereof as it may determine”. Hence, the Parole Board may require a delinquent parolee to serve out in prison the balance of the maximum term of his original sentence; or, it may require him to serve only a part of such maximum in prison, and permit him to serve out the balance of such maximum outside prison walls — by Avay of another parole. There is nothing in the statute (§ 218) Avhich permits of the stopping of his original sentence — once he has been returned to prison. Under section 219 of the Correction Law —AAdiich applies Avhere a felony has been committed Avhile on parole — the prisoner may be required to serve the maximum of his original sentence before being permitted to serve the new felony sentence. Here, the appellant’s delinquency while on parole in 1947 did not amount to a felony — it Avas a misdemeanor. Thus, only section 218 was hero applicable. Nevertheless, even assuming that appellant here had committed a felony while on parole — and that section 219 would he applicable — at best, appellant *237 would have been required to serve the entire balance of the maximum, of his original sentence before being permitted to serve the new felony sentence. The original sentence here- — ■ because they were running as one — consisted of both the Elmira and State prison sentences. It is thus clear that, under either section 218 or section 219, the running of the original sentence cannot be stopped —once it has commenced to run again by virtue of the prisoner’s apprehension and return to prison. It follows, therefore, that the direction — on March 30, 1948 — that the sentences should thereafter run consecutively was legally ineffective, for, in order to have that effect, there must have been power to stop the running of the State prison sentence until the Ehnira sentence had expired. There was no such power.
The fact that there was a provision in appellant’s parole agreement — which parole he violated because of his delinquency —to the effect that a violation on his part “may result in the revocation of my parole and of the permission to start my new sentence ” is of no consequence. In People ex rel. Paris v. Hunt (234 N. Y. 558) we held that a provision in a judgment and sentence of one convicted of a felony, who was sentenced to an indeterminate term in the State prison, the minimum of which was fixed at 2 years and 6 months, that, after serving-one year of the aforesaid sentence the defendant was to be returned to the County Court of Bronx County for final disposition, is invalid, as being a violation of section 2188 of the Penal Law, relating to suspension of a sentence, which provides that ‘ ‘ the imprisonment directed by the judgment, shall not be suspended or interrupted after such imprisonment shall have commenced.” In People ex rel. Ingenito v. Warden (293 N. Y. 803) we held that the Parole Board may not impose a condition which would have the effect of increasing the possible sentence of a prisoner beyond that permitted by the statute at the time of his conviction. Thus, as earlier treated, the Parole Board may not stop the running of the State prison sentence once it has permitted it to run and a condition to the effect that the Parole Board may revoke its permission to petitioner to commence the service of the State prison sentence — after it has been permitted to run — is invalid.
*238 The orders appealed from should he reversed' and" the prisoner discharged.
Judges Desmond, Dye and Fuld concur with Judge Burke-; Chief Judge Conway dissents in an opinion in which Judges Froessel and Van Voorhis concur.
Order affirmed.